# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MHAMMAD ABU-SHAWISH,**
        **Plaintiff,**

    v.                                                                                      **Case No. 10-C-0473**

**UNITED STATES OF AMERICA, et al.,**
        **Defendants.**

---

## DECISION AND ORDER

Plaintiff Mhammed Abu-Shawish, proceeding pro se, has filed a complaint against the United States and twenty-four individual defendants. He brings his claims against the United States pursuant to the Federal Tort Claims Act and his claims against the individual defendants pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Before me now is the United States' motion to dismiss.

### I. BACKGROUND

During the late 1990s and early 2000s, plaintiff was the founder, president and executive director of Arabian Fest/Arab American Festival, Inc. As the name implies, the corporation organized Arabian Fest, an annual festival that celebrated Arab-American culture. According to the complaint, in the course of organizing the event, plaintiff sent "letters of invitation" to artists, musicians, traditional clothing designers, and choreographers living in Jordan. Each letter invited the recipient to obtain a work visa and travel to Milwaukee for the purpose of performing at the festival. The performer would show the letter of invitation to U.S. embassy officials in Jordan in order to obtain a work

visa. Plaintiff also communicated with embassy officials and encouraged them to issue work visas to the individuals he invited to perform at Arabian Fest.

According to the complaint, sometime in 2002 or 2003, agents of the State Department began to suspect that Leslie Hickman, an official at the U.S. embassy in Jordan, was issuing fraudulent visas to Jordanian citizens. In June 2003, these agents interviewed plaintiff at a restaurant he owned and asked him about Hickman. Hickman was plaintiff's contact at the embassy regarding visas for Arabian Fest performers, and the State Department thought that plaintiff might have incriminating information about him. When plaintiff refused to incriminate Hickman, the agents threatened him with arrest and criminal prosecution. Plaintiff's theory of the case seems to be that when plaintiff refused to incriminate Hickman, the State Department began to fabricate a case against him for visa fraud. Plaintiff believes the State Department accomplished their purpose by making it appear that plaintiff, in exchange for a fee or other consideration, sent letters of invitation to Jordanian citizens who were not genuine performers so that they could obtain work visas and use them to immigrate to the United States illegally.

On October 2, 2003, criminal proceedings were initiated against plaintiff by the filing of a criminal complaint. See Case No. 03-CR-211 (E.D. Wis.). One of the State Department agents who had interviewed plaintiff at his restaurant, Dean Phillip, signed the criminal complaint and submitted an affidavit in support of an arrest warrant for plaintiff and search warrants for plaintiff's home and restaurant. The complaint charged plaintiff with two crimes: aiding and abetting the obtaining of a false visa and federal-program fraud. Regarding the federal-program charge – which seems to have been unrelated to the alleged visa fraud – the complaint alleged that plaintiff's company received $75,000 in

2

block-grant money to develop a business plan for recruiting new businesses along Muskego Avenue in the City of Milwaukee. The grant money came from the Department of Housing and Urban Development but was distributed by the City of Milwaukee. The complaint alleged that plaintiff never used the money to develop the business plan. Instead, he plagiarized a plan that someone else had previously submitted to the City and kept the money for himself.

After receiving the criminal complaint and Phillip's affidavit, a federal magistrate judge issued an arrest warrant for plaintiff. Plaintiff was arrested on October 3, 2002 and brought before the magistrate, who found that plaintiff was a flight risk and ordered that he be detained pending trial. In the ensuing months, multiple superceding indictments were issued against plaintiff, ultimately culminating in the return of a fourth superceding indictment on November 18, 2004. The indictment alleged two counts of federal-program fraud in violation of 18 U.S.C. § 666 and five counts of conspiracy to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546.

On November 2, 2004, while the prosecution involving the visa fraud and the federal-program fraud was ongoing, a federal grand jury returned a separate five-count indictment against plaintiff and a co-defendant, Josephine Dvorak. See Case No. 04-CR-258 (E.D. Wis.). In this proceeding, the government alleged that plaintiff and his co-defendant had defrauded a federally insured bank in order to obtain a home mortgage. (The bank fraud seems to have been unrelated to either the visa fraud or federal-program fraud.) The case was tried to a jury, and on February 10, 2005, plaintiff was found guilty of two counts of bank fraud and two counts of making false statements to influence a federally insured bank. On April 29, 2005, he was sentenced to eight months in prison and

three years of supervised release. Plaintiff appealed, but the Seventh Circuit affirmed the conviction.

Meanwhile, in the other criminal case, the government dismissed one of the two federal-program fraud charges along with all of the visa-fraud charges. The case went to trial on the remaining federal-program fraud charge, and, on June 29, 2005, the jury found plaintiff guilty. On February 1, 2006, the court sentenced him to thirty-six months in prison. Plaintiff appealed, and on November 1, 2007, the Seventh Circuit vacated the conviction. The court found that the indictment did not properly allege a violation of 18 U.S.C. § 666 because it did not allege that plaintiff had defrauded an organization for which he served as an agent. See United States v. Abu-Shawish, 507 F.3d 550 (7th Cir. 2007). On remand, the district court dismissed the indictment without prejudice at the government's request.

On November 14, 2007, the government obtained a new indictment relating to the federal-program fraud, thus commencing a third criminal proceeding against plaintiff. See Case No. 07-CR-289 (E.D. Wis.). This time, the indictment charged plaintiff with two counts of mail fraud and one count of transporting stolen funds in foreign commerce. See 18 U.S.C. §§ 1341 & 2314. The case was tried to a jury, and on October 16, 2008, the jury found plaintiff not guilty on all three counts. This brought the series of criminal prosecutions involving plaintiff to a close.

On December 11, 2008, plaintiff filed a federal complaint against Steven M. Biskupic, the U.S. Attorney for the Eastern District of Wisconsin, and Karine Moreno-Taxman, one of the assistant U.S. attorneys involved in plaintiff's prosecutions. The complaint alleged false imprisonment. On January 26, 2009, the district court screened

the complaint and dismissed it without prejudice for failure to state a claim on which relief may be granted.

On June 9, 2009, plaintiff filed an administrative tort claim with the United States Department of Justice. He alleged claims for malicious prosecution, abuse of process, intentional and/or negligent infliction of emotional distress, libel, slander, false arrest, false imprisonment, negligence, and "wrongful act or omission" by government employees. He alleged that these claims arose out of his initial indictment for visa fraud and federal-program fraud and the final criminal proceeding against him in which he was acquitted. Plaintiff did not allege that the government committed any wrongdoing in the course of the prosecution for bank fraud. The Department of Justice denied his claims, and plaintiff commenced the present suit on June 4, 2010. Pursuant to the Federal Tort Claims Act, plaintiff re-alleges the claims included in his administrative claim and adds a claim for false light invasion of privacy. The United States moves to dismiss all of these claims.

## II. DISCUSSION

The United States offers several reasons for dismissing plaintiff's Federal Tort Claims Act claims. First, it argues that all of the claims except the claim for malicious prosecution are barred by the two-year statute of limitations set forth in 28 U.S.C. § 2401(b). Second, it argues that plaintiff has failed to state a claim for malicious prosecution. See Fed. R. Civ. P. 12(b)(6). Finally, it argues in the alternative that certain of plaintiff's claims are barred by the exceptions to the United States' waiver of sovereign immunity contained in 28 U.S.C. §§ 2680(a) and (h).

At the outset, I note that except for the United States' argument that plaintiff has failed to state a claim for malicious prosecution, all of its arguments pertain to affirmative defenses – namely, the statute of limitations and exceptions to the United States' waiver of sovereign immunity. This is a problem, because the presence of an affirmative defense is ordinarily not a valid basis for dismissing a complaint before the defendant has filed an answer. Xechem, Inc. v. Bristol-Meyers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004). A plaintiff does not need to anticipate and plead around potential defenses, and so as long as the complaint otherwise states a claim, it may not be dismissed on the ground that the defendant has a meritorious defense. Id.

Although it does not explicitly say so, the United States seems to be taking the position that because its defenses relate to sovereign immunity, they relate to the court's subject-matter jurisdiction, and therefore they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). However, at least in the Seventh Circuit, sovereign immunity is a defense rather than a limitation on the court's subject-matter jurisdiction. See, e.g., Williams v. Fleming, 597 F.3d 820, 823-24 (7th Cir. 2010); Collins v. United States, 564 F.3d 833, 837-38 (7th Cir. 2009); Reynolds v. United States, 549 F.3d 1108, 1111-1112 (7th Cir. 2008). Therefore, none of the United States' grounds for dismissal implicates the court's subject-matter jurisdiction, and so the motion to dismiss is properly brought only as a motion to dismiss for failure to state a claim. See Reynolds, 549 F.3d at 1112.

There is, however, an exception to the general rule that a complaint may not be dismissed for failure to state a claim on the basis of an affirmative defense. The exception applies when the plaintiff pleads himself out of court by "admit[ting] all the ingredients of

6

an impenetrable defense." Xechem, 372 F.3d at 901. As I explain below, plaintiff has pleaded facts that establish beyond doubt that certain of his claims are barred by the statute of limitations. Those claims will be dismissed. However, no claims will be dismissed on the basis of the exceptions in §§ 2680(a) and (h) at this time. Section 2680(a) is the "discretionary function" exception, and plaintiff's complaint does not plead facts that establish beyond doubt that his claims involve discretionary functions. Whether any claims are barred by § 2680(h) turns on whether they involve "acts or omissions of investigative or law enforcement officers." Plaintiff has not pleaded facts establishing beyond doubt that his claims do not involve acts or omissions of such officers. Therefore, whether §§ 2680(a) or (h) bar any of plaintiff's claims is an issue that will have to wait until the United States establishes the underlying facts.

With that out of the way, I turn to an analysis of plaintiff's specific claims. Note that Wisconsin law is the applicable substantive law because liability under the Federal Tort Claims Act is determined by "the law of the place where the alleged acts or omissions occurred." 28 U.S.C. § 1346(b).

**A.     Malicious Prosecution**

Plaintiff's theory of malicious prosecution is not entirely clear, but the gist of the claim seems to be that agents of the State Department instituted the criminal prosecution for visa fraud and federal-program fraud maliciously as retribution for plaintiff's refusal to incriminate Hickman. Under Wisconsin law, a claim for malicious prosecution has six elements: (1) institution or continuation of judicial proceedings against the plaintiff; (2) commencement or continuation of the proceedings by or at the instance of the defendant;

(3) termination of the proceedings in the now-plaintiff's favor; (4) malice in instituting or continuing the proceedings; (5) lack of probable cause for instituting the proceedings; and (6) damages. See, e.g., Wis. Public Serv. Corp. v. Andrews, 316 Wis. 2d 734, 747 (Ct. App. 2009).

The United States moves to dismiss on the ground that plaintiff cannot establish lack of probable cause. However, plaintiff alleges that there was no probable cause to prosecute him for visa fraud and federal-program fraud (Compl. ¶¶ 78(a)-(f)), and the United States does not contend that plaintiff has failed to satisfy the requirements of Rule 8(a) in alleging lack of probable cause. Instead, the United States points out that during the course of the criminal prosecutions there were multiple determinations of probable cause: by the magistrate when the arrest warrant was issued, by the grand jury when it returned the various indictments, and (implicitly) by the petit jury when it found plaintiff guilty of federal-program fraud. The United States contends that these determinations create a presumption that there was probable cause to prosecute plaintiff. It also contends that these determinations are entitled to issue-preclusive effect in the present litigation. However, even if the United States is correct about the effect of the prior determinations of probable cause, these are not matters that can be resolved at the pleading stage.

First, even if the prior determinations give rise to a presumption of probable cause, it is possible that plaintiff will be able to rebut the presumption. The United States in its reply brief attempts to show that the complaint's allegations do not rebut the presumption, but no rule of pleading requires that the presumption be rebutted in the complaint. Rule 8(a) requires only a short and plain statement showing that the pleader is entitled to relief, and, as noted, the United States does not argue that plaintiff has failed to satisfy this

requirement. Plaintiff is therefore entitled to take discovery and otherwise develop his theory as to why probable cause was lacking.

Second, issue preclusion is an affirmative defense, Simpson v. Nickel, 450 F.3d 303, 306 (7th Cir. 2006), and so unless plaintiff has pleaded all the elements of preclusion in the complaint his claims cannot be dismissed on that ground. Moreover, it is possible that in vacating plaintiff's conviction the Seventh Circuit deprived the prior determinations of probable cause of preclusive effect. The Seventh Circuit found that the government charged plaintiff with the wrong crime, and this seems to imply that there was no probable cause to believe that plaintiff had committed that specific crime. Although the Seventh Circuit noted that it was clear that plaintiff had defrauded the City of Milwaukee, it does not follow that the United States had probable cause to prosecute the plaintiff for the crime he was actually charged with. Thus, I am not convinced that plaintiff has pleaded all the elements of issue preclusion and will not dismiss the malicious-prosecution claim on that ground at this time.

**B.   Abuse of Process**

The tort of abuse of process occurs when one uses legal process, whether criminal or civil, to accomplish a purpose for which it was not designed. See, e.g., Strid v. Converse, 111 Wis. 2d 418, 426 (1983). Plaintiff's theory of abuse of process seems to be similar to his theory of malicious prosecution: State Department agents caused the issuance of legal process (such as the indictments and arrest warrant) for the purpose of

9

punishing plaintiff for refusing to incriminate Hickman. The allegedly abusive process was issued at various times during the three criminal prosecutions of plaintiff.[1]

The United States does not contend that plaintiff has failed to adequately plead his abuse-of-process claims. Instead, it argues that those claims are barred by the two-year statute of limitations, 28 U.S.C. § 2401(b). This is an affirmative defense that plaintiff was not required to plead around. However, because the tort of abuse of process is complete on the date the abusive process is issued, see Nader v. Democratic Nat'l Comm., 567 F.3d 692, 699 (D.C. Cir. 2009), it is clear that the statute of limitations bars any claim for abuse of process that involves process issued before June 9, 2007 (i.e., more than two years before plaintiff filed his administrative claim). This means that the abuse-of-process claims based on the indictments and other process issued in the initial criminal prosecution (No. 03-CR-211) and the bank-fraud prosecution (04-CR-258) are barred by the statute of limitations, since all process in those cases had been issued by the end of 2004. (See Pl.'s Br. in Opp. [Docket #35] at 9, where plaintiff lists the dates on which the acts constituting abuse of process occurred.) However, the abuse-of-process claims based on the process issued in the third prosecution (07-CR-289) are not barred by the statute of limitations, as process in that case was issued in November 2007 and January 2008.

Plaintiff contends that the abuse-of-process claims based on the first two prosecutions are not barred by the statute of limitations because of equitable tolling and

---

[1]The United States contends that plaintiff is not alleging abuse of process in connection with the process issued during the third and final criminal prosecution. However, reading the complaint as a whole, it is reasonably clear that plaintiff contends that such process was abused. Moreover, in his brief, plaintiff specifically identifies the indictment and superceding indictment issued in that case as process that was abused. (Br. in Opp. [Docket #35] at 9.)

the continuing-violation doctrine. Regarding equitable tolling, plaintiff argues that the limitations period should be deemed to have been tolled during the time his first civil lawsuit was pending. However, even if the limitations period should be tolled for that period, tolling would add only six months to the time plaintiff had to file his administrative claim. Plaintiff filed his first civil suit on December 11, 2008, and by this time the statute of limitations had already run on any claims based on process issued before December 11, 2006. Again, all the process in the first two criminal cases had been issued by that time, and so even if equitable tolling applied it would not help plaintiff.

Regarding the continuing-violation doctrine, it does not apply in the present circumstances. As the Seventh Circuit has observed, the doctrine is misnamed, as it does not allow someone to sue for an injury that occurred a long time ago on the ground it is part of a continuing series of related injuries. Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008). Rather, the doctrine "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Id. In the present case, plaintiff was injured each time allegedly abusive process was issued, and so he did not have to wait until all abusive process had been issued to file suit. Thus, the continuing-violation doctrine does not save the claims based on the process issued during the first two criminal prosecutions. Those claims will be dismissed.

**C.    False Arrest & False Imprisonment**

Plaintiff brings claims for false arrest and false imprisonment based on his initial arrest on October 3, 2003 and subsequent imprisonment for three years. The United States moves to dismiss these claims as barred by the statute of limitations. Although

11

these claims are barred by the statute of limitations, I will dismiss them for a more fundamental reason: false arrest and false imprisonment occur only when a person is detained without legal process, Wallace v. Kato, 549 U.S. 384, 388-89 (2007); Sell v. Thompson & Coates, Ltd., 163 Wis. 2d 765, 772 (Ct. App. 1991), and plaintiff has pleaded that his arrest and detention were supported by legal process – namely, the initial arrest warrant and the magistrate's detention order. (Compl. ¶¶ 57 & 62.) Thus, by definition, no false arrest or false imprisonment could have occurred.[2]

### D. False Light Invasion of Privacy

Plaintiff includes a claim for false light invasion of privacy in his complaint, which the United States moves to dismiss as barred by the statute of limitations. Again, however, there is a more fundamental defect in this claim: Wisconsin does not recognize the tort of false light invasion of privacy. See Ladd v. Uecker, 323 Wis. 2d 798, 803-04, 810 (Ct. App. 2010). Therefore, this claim will be dismissed.

### E. Defamation

Plaintiff includes a claim for defamation in his complaint, which the United States moves to dismiss as barred by the statute of limitations. At this point, however, the defamation claim is so undeveloped that it is hard to tell whether it is barred by the statute of limitations. To the extent the claim involves statements made during the course of the first two criminal prosecutions, it is almost certainly barred by the statute of limitations. But

---

[2]Plaintiff, of course, contends that federal agents committed wrongful acts in the course of obtaining the legal process against him. To the extent the process was procured unlawfully, the United States may be liable for other torts (such as malicious prosecution or abuse of process), but it is not liable for false arrest or false imprisonment.

since it is conceivable that plaintiff is also challenging statements made during the third prosecution, I will not dismiss the claim at this time.

**F.     Intentional Infliction of Emotional Distress**

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate (1) that the defendant intended to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. <u>Rabideau v. City of Racine</u>, 243 Wis. 2d 486, 501 (2001). In the present case, plaintiff alleges that the defendants initiated the criminal prosecutions in order to cause him to suffer emotional distress. The United States moves to dismiss this claim as barred by the statute of limitations. However, at this point it is not clear when the plaintiff suffered the alleged "extreme disabling emotional response to the defendant's conduct." To the extent this occurred during the first two criminal prosecutions, the claim is likely barred by the statute of limitations. To the extent that it occurred during the third prosecution, it is not. Because plaintiff has not pleaded facts establishing that this claim is barred by the statute of limitations, it will not be dismissed at this time.

**G.     Negligent Infliction of Emotional Distress, Negligence, and "Wrongful Act or Omission"**

Up to this point, all of plaintiff's claims have involved intentional torts. But plaintiff also brings several claims based on negligence. It is not clear what he hopes to accomplish with these claims, since his theory of the case is that the defendants intended to harm him. The United States moves to dismiss the negligence claims based on the

statute of limitations, but since it is not clear that all of the alleged negligent conduct occurred during the first two criminal prosecutions, I will not dismiss these claims at this time.

## H. Equitable Relief and Punitive Damages

Finally, the United States moves to dismiss plaintiff's demand for equitable relief and punitive damages. In response, plaintiff concedes that he is not seeking punitive damages from the United States pursuant to the Federal Tort Claims Act. (Br. in Opp. [Docket #35] at 20.) Therefore, to the extent the complaint can be construed as requesting punitive damages from the United States, such request is stricken. Plaintiff also seems to concede that he is not seeking equitable relief pursuant to the Federal Tort Claims Act. However, to the extent there is any doubt, I note that § 1346(b) waives sovereign immunity only for claims for "money damages."

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the United States' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2011.

/s_____
LYNN ADELMAN
District Judge