# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MHAMMAD ABU-SHAWISH,**
**Plaintiff,**

**v.**                                                  **Case No.  10-C-0473**

**UNITED STATES OF AMERICA, et al.,**
**Defendants.**

---

## DECISION AND ORDER

Mhammed Abu-Shawish, proceeding pro se, is currently pursuing claims for malicious prosecution, abuse of process, and other torts against the United States of America under the Federal Tort Claims Act ("FTCA").  In a previous order, I dismissed several of the plaintiff's causes of action for failure to state a claim on which relief may be granted.  <u>See</u> Aug. 22, 2011 Order, ECF No. 38.  In a different order, I dismissed all of the plaintiffs' <u>Bivens</u> claims (<u>see</u> <u>Bivens v. Six Unknown Agents Named Agents</u>, 403 U.S. 388 (1971)) against individual federal defendants without prejudice for insufficient service of process.  <u>See</u> Feb. 27, 2012 Order, ECF No. 61.  Before me now are the United States' motion for judgment on the pleadings and the plaintiff's motion for leave to file an amended complaint.

## I.  BACKGROUND

Abu-Shawish was the founder, president and executive director of Arabian Fest/Arab American Festival, Inc., a corporation that organized Arabian Fest, an annual festival that celebrated Arab-American culture.  Between 2003 and 2008, the United States brought three criminal cases against him in the Eastern District of Wisconsin.  The first

case, Eastern District of Wisconsin Case No. 03-CR-211, involved allegations of visa fraud and federal-program fraud. The second case, Eastern District of Wisconsin Case No. 04-CR-258, involved allegations that Abu-Shawish and a co-defendant, Josephine Dvorak, had defrauded a federally insured bank in order to obtain a home mortgage. The third case, Eastern District of Wisconsin Case No. 07-CR-289, which was essentially a continuation of the first case, involved allegations of mail fraud and transporting stolen funds in foreign commerce. In the present lawsuit, Abu-Shawish alleges that the United States and twenty-four individual agents and employees of the United States initiated the above criminal cases maliciously and committed abuse of process.[1]

The events giving rise to this suit began on August 24, 2002, when agents of the U.S. Department of State's Diplomatic Security Service ("DSS") received information from a confidential source alleging ongoing visa fraud at the U.S. embassy in Amman, Jordan. According to the source, individuals in Amman were paying Abu-Shawish fees up to $10,000 to issue them "letters of invitation" to Arabian Fest. Each letter invited the recipient to travel to Milwaukee for the purpose of performing or otherwise participating in the festival, and it contained a promise that Arabian Fest would pay the recipient's round-trip airfare between Jordan and the United States. The recipient would show this letter to embassy officials in Amman in order to prove that he or she qualified for a non-immigrant visa. To qualify for such a visa, an applicant had to explain how his or her travel expenses

---

[1]Abu-Shawish is trying to pursue legal theories other than malicious prosecution and abuse of process (such as intentional infliction of emotional distress), but his allegations in support of those theories are extremely conclusory and do not warrant discussion. To the extent that Abu-Shawish has any even arguably viable claims, they are claims for malicious prosecution and abuse of process.

2

would be paid, and so the promise by Arabian Fest to pay those expenses was likely an important factor in the decision to issue visas to the Arabian Fest participants. However, DSS agents learned that this promise to pay the cost of travel was likely false. In 2001, Arabian Fest invited ten individuals to attend Arabian Fest and promised to pay their travel expenses. At that time, the cost of a single round-trip ticket from Jordan to the United States was more than $6,000, yet Arabian Fest had budgeted only $300 for travel expenses for that year and had a total operating budget of only $85,000.

In November 2002, DSS agents interviewed three individuals in Jordan who had obtained visas using letters of invitation to Arabian Fest. Those individuals had obtained their visas in October 2002, yet Arabian Fest had occurred in September 2002 and was not scheduled to occur again until September 2003. One of the individuals informed DSS agents that he intended to remain in the United States indefinitely, and that in order to obtain a visa he had contacted a middleman in Jordan who was able to procure a letter of invitation to Arabian Fest from Abu-Shawish in exchange for $10,000.

DSS agents learned that between 2000 and 2002, twenty-three additional Jordanians obtained visas under the claim that they planned on attending Arabian Fest. As of December 5, 2002, twelve of those individuals had not departed the United States in accordance with the terms of their visas. DSS agents were able to locate one of those individuals, and that individual stated that he or she obtained a letter of invitation to Arabian Fest from Abu-Shawish in exchange for a promise to pay $3,000.

In May and June of 2003, DSS began to conduct surveillance of Abu-Shawish in the United States with the help of a confidential informant. Abu-Shawish alleges that this informant was a woman named Assya Moumany. DSS agents monitored phone calls

3

between Abu-Shawish and Moumany and also monitored an in-person conversation between them. In those conversations, Moumany asked Abu-Shawish to issue a letter of invitation to Arabian Fest to her friend, but Abu-Shawish refused to do so and said that he could provide letters of invitation only to genuine participants in the festival. Moumany also told Abu-Shawish that she had entered the United States by using one of his letters of invitation. Abu-Shawish asked to see this letter, and when he examined it he determined that it was forged. Abu-Shawish noted that the letter contained the wrong address for Arabian Fest, that the signature on the letter was not his, that Abu-Shawish's own name was misspelled on the letter, and that the letter was not addressed to the correct embassy official.

On June 4, 2003, six federal agents interviewed Abu-Shawish at a restaurant he owned. One of these agents was Dean Phillip, a DSS agent who would later sign the criminal complaint that initiated the first criminal case against Abu-Shawish. According to Abu-Shawish's complaint, the agents questioned Abu-Shawish about his relationship with Leslie Hickman, an employee who worked at the embassy in Jordan. Abu-Shawish stated that Hickman helped Abu-Shawish obtain visas for Arabian Fest invitees. At some point, Phillip told Abu-Shawish that Hickman was under investigation for visa fraud and that the government wanted Abu-Shawish to cooperate in the investigation. Abu-Shawish stated that he was willing to cooperate but that he was not aware of Hickman's being involved in criminal activity. According to Abu-Shawish, the agents then became angry and told Abu-Shawish that if he did not cooperate as requested, he would be "arrested and charged" and that agents would "find anything on [him] to throw [him] in jail." (Compl. ¶ 52.) Abu-Shawish told the agents that he was not involved in any wrongdoing and that all the

4

individuals who received letters of invitation to Arabian Fest were genuine performers or participants in the festival. He also showed the agents the forged letter of invitation he received from Moumany. The agents left, but they would interview Abu-Shawish on two other occasions, once on July 31, 2003, and again on August 7, 2003.

While the investigation into the allegations of visa fraud was ongoing, federal agents learned about the events that would eventually result in the federal-program fraud charge. Those events began in 2001, when Abu-Shawish caused Arabian Fest to apply for a block grant from the City of Milwaukee. The block grant was funded with money distributed by the U.S. Department of Housing and Urban Development. When it applied for the grant, Arabian Fest proposed to develop a business plan for encouraging new businesses to open along Muskego Avenue, a commercial strip near Arabian Fest's headquarters. The City approved Arabian Fest's request in the amount of $75,000. In May 2002, Abu-Shawish submitted a business plan to the City and represented that it was the plan that Arabian Fest had prepared using the block-grant money. However, federal agents learned that instead of creating its own plan, Arabian Fest substantially plagiarized a plan that had already been submitted to the City by a different block-grant recipient. Thus, federal agents concluded that Arabian Fest had taken the grant money but provided the City with nothing of value in return. The agents learned that Abu-Shawish had caused Arabian Fest to pay him over $15,000 from the block-grant funds.

On October 3, 2003, Dean Phillip signed the criminal complaint against Abu-Shawish in the first criminal case and submitted an affidavit in support of the complaint, an arrest warrant for Abu-Shawish, and search warrants for his home and restaurant. Phillip alleged that Abu-Shawish participated in the commission of visa fraud when he issued

letters of invitation containing false statements indicating that Arabian Fest would pay the travel expenses of the recipients, in violation of 18 U.S.C. §§1546 & 371. He also alleged that Abu-Shawish committed federal-program fraud in violation of 18 U.S.C. § 666 by paying himself $15,000 from the block-grant money that Arabian Fest had obtained by fraud.

On October 7, 2003, the grand jury returned an indictment against Abu-Shawish that charged him with visa fraud and federal-program fraud. Eventually, the United States dropped the visa fraud charges, and a trial was held on the federal-program fraud charge. A jury found Abu-Shawish guilty, and Abu-Shawish appealed. The Seventh Circuit vacated the conviction, concluding that the indictment did not properly allege a violation of 18 U.S.C. § 666 because it did not allege that Abu-Shawish was an agent of the City of Milwaukee, the organization that he defrauded. See United States v. Abu-Shawish, 507 F.3d 550 (7th Cir. 2007). However, the Seventh Circuit acknowledged that this was only a technical victory for Abu-Shawish. The court noted that "[w]ithout question, the indictment properly alleged and the evidence was sufficient to show that Abu-Shawish defrauded the City of Milwaukee." Id. at 558. The court also noted that it was likely that "Abu-Shawish could have been charged with mail or wire fraud, since he used both the mail and telephone as a part of his fraudulent scheme." Id.

On remand, the district court dismissed the indictment without prejudice at the government's request. The government took up the Seventh Circuit's suggestion about charging Abu-Shawish with mail fraud, and on November 14, 2007, the grand jury returned an indictment charging Abu-Shawish with two counts of mail fraud and one count of transporting stolen funds in foreign commerce. See 18 U.S.C. §§ 1341 & 2314. This

6

commenced the third criminal case against Abu-Shawish. The case was tried to a jury, and on October 16, 2008, the jury found Abu-Shawish not guilty on all three counts.

Back in 2004, while the criminal case involving visa fraud and federal-program fraud was ongoing, the grand jury returned a separate indictment that commenced the second criminal case against Abu-Shawish, the one involving the allegations that Abu-Shawish and a co-defendant had made false statements in order to obtain a mortgage. In that case, Abu-Shawish was found guilty of two counts of bank fraud and two counts of making false statements to influence a federally insured bank. On April 29, 2005, he was sentenced to eight months in prison and three years of supervised release. Plaintiff appealed, but the Seventh Circuit affirmed that conviction.

## II. DISCUSSION

### A. Motion for Judgment on the Pleadings

As noted, Abu-Shawish brings claims for malicious prosecution and abuse of process against the United States under the Federal Tort Claims Act. The United States' principal ground for judgment on the pleadings is that the complaint fails to state plausible claims for relief and therefore should be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6), 12(c) & 12(h)(2)(B). To state a claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a

7

complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, the plaintiff must give enough details about the case to "present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

I begin with Abu-Shawish's claims for malicious prosecution. The elements of malicious prosecution are: (1) a judicial proceeding was instituted against the plaintiff; (2) the proceeding was commenced by, or at the instance of, the defendant; (3) the former proceeding was terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there was malice in the institution of the former proceeding—which means that the proceeding was instituted for a purpose other than bringing an offender to justice; (5) there was no probable cause for the institution of the former proceeding; and (6) the plaintiff suffered injury or damage as a result of the former proceeding. Brownsell v. Klawitter, 102 Wis. 2d 108, 112 (1981); Elmer v. Chicago & N.W. Ry. Co., 257 Wis. 228, 231 (1950).[2]

---

[2]The FTCA imposes liability on the United States under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the alleged acts or omissions occurred, which in this case is Wisconsin. See 28 U.S.C. § 1346(b)(1). Therefore, I apply Wisconsin substantive law.

8

Right away we can see that Abu-Shawish has no claim for malicious prosecution in connection with the second criminal case: Abu-Shawish was found guilty, and so that proceeding did not terminate in his favor. Thus, the only question is whether Abu-Shawish has a plausible claim for malicious prosecution arising out of the first and third criminal cases. And the answer turns on whether Abu-Shawish has pleaded facts giving rise to a plausible inference that a federal employee or agent initiated those cases without probable cause and with malice—i.e., without reasonable grounds to believe that he was guilty. Although Abu-Shawish identifies twenty-four federal employees and agents in his complaint, it is clear that his focus is on the federal agents in charge of the investigation for visa fraud and federal-program fraud—namely, Dean Phillip and the agents who worked with him. Phillip signed the criminal complaint that initiated the criminal case against Abu-Shawish in 2003, and thus he could be said to have "commenced" the criminal proceeding against Abu-Shawish.[3] I thus examine whether Abu-Shawish has pleaded facts giving rise to a plausible inference that Phillip did not have reasonable grounds to believe that Abu-Shawish was guilty.

In arguing that Phillip did not have reasonable grounds to believe that he was guilty, Abu-Shawish points out that Phillip had evidence indicating that Abu-Shawish invited only genuine performers and participants to Arabian Fest. Abu-Shawish emphasizes that he showed Phillip pictures of the invitees performing at the festival and that he pointed out that

---

[3]The United States argues that the grand jury's indictment of Abu-Shawish a few days after Phillip signed the complaint is an event that breaks any causal chain between Phillip's acts and the resulting criminal proceeding, but for purposes of this opinion I assume that Phillip's signing the complaint was an act that commenced the first criminal case.

Case 2:10-cv-00473-LA   Filed 09/12/12   Page 9 of 14   Document 82

Moumany's letter of invitation was obviously forged. However, the visa-fraud charges filed against Abu-Shawish were founded not on his inviting non-genuine performers to Arabian Fest, but on his promises to pay the invitees' round-trip travel expenses. In his affidavit, Phillip stated that he examined the financial records of Arabian Fest (which Arabian Fest had submitted to the City of Milwaukee as part of its block-grant proposal) and determined that Arabian Fest had budgeted only $300 for travel in 2001 and had a total operating budget of only $85,000, yet had promised to pay the travel expenses of ten individuals at a cost of $6,000 each, for a total of $60,000. Based on this information, Phillip concluded that Abu-Shawish had made false statements knowing that other individuals would use those statements to obtain visas. In his complaint, Abu-Shawish does not plead any facts indicating that Phillip's conclusion about the travel expenses was not supported by the facts that he learned during his investigation. Abu-Shawish does not allege that Phillip was in possession of information indicating that Abu-Shawish never promised that Arabian Fest would pay the recipients' travel expenses or that Phillip was in possession of information indicating that Arabian Fest did in fact pay them. Thus, Abu-Shawish has not pleaded facts giving rise to a plausible inference that Phillip did not have reasonable grounds to believe that Abu-Shawish was guilty of visa fraud.

As for the federal-program fraud charge, Abu-Shawish does not plead facts suggesting that Phillip did not have reasonable grounds to believe that Abu-Shawish had defrauded the City of Milwaukee by accepting block-grant money for a plagiarized plan. Instead, he points out that the Seventh Circuit eventually determined that the government had charged Abu-Shawish with the wrong crime—he should have been charged with mail fraud rather than federal-program fraud. However, this fact does not give rise to an

Case 2:10-cv-00473-LA   Filed 09/12/12   Page 10 of 14   Document 82

inference that Phillip lacked reasonable grounds for believing that Abu-Shawish had committed a crime, or that he initiated the criminal case for some ulterior motive. It shows nothing more than that the government made a mistake in its interpretation of the statute that makes federal-program fraud a crime. Accordingly, Abu-Shawish has not pleaded facts giving rise to a plausible inference that Phillip (or any other federal agent) is liable for malicious prosecution.

Abu-Shawish's only remaining viable claims involve abuse of process, which is the use of legal process, whether criminal or civil, to accomplish a purpose for which it was not designed. See, e.g., Strid v. Converse, 111 Wis. 2d 418, 426 (1983). In an earlier order in this case, I dismissed all claims for abuse of process arising out of the process issued in the first two criminal cases as barred by the statute of limitations. See Aug. 22, 2011 Order at 9–11, ECF No. 38. That leaves only the process issued in the third criminal case, the one for mail fraud and transporting stolen funds in foreign commerce. However, the only process issued in that case was the indictment, and the complaint contains no allegations giving rise to a plausible inference that any agent or employee of the United States used the indictment to accomplish a purpose for which it was not designed. Accordingly, Abu-Shawish has not pleaded a plausible claim for abuse-of-process.

In sum, the plaintiff has not pleaded any plausible claim for relief against the Untied States under the Federal Tort Claims Act. His complaint will be dismissed.

**B.    Plaintiff's Motion for Leave to File an Amended Complaint**

In his motion for leave to file an amended complaint, Abu-Shawish seeks to reinstate the Bivens claims that I dismissed for insufficient service of process on the

defendants.[4]  However, that motion will be denied on the ground that the amendment would be futile.  See, e.g., Tribble v. Evangelides, 670 F.3d 753, 761 (7th Cir. 2012) (district court has discretion to deny leave to amend when the amendment would be futile). The amendment would be futile because the proposed amended complaint, which is attached to Abu-Shawish's motion, does not state plausible Bivens claims.  To state a Bivens claim, a plaintiff must show that the defendants violated federal law.  See Baker v. McCollan, 443 U.S. 137, 140 (1979) (noting that the first inquiry in any § 1983 or Bivens suit is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States).  Although Abu-Shawish alleges in conclusory fashion that all of the defendants violated his rights under the Constitution and other federal laws, he includes no specific allegations in his complaint that make his claims plausible.  To be sure, Abu-Shawish asserts that the defendants' actions were motivated by discrimination against persons from  the Middle East, but he includes no specific allegations that support this assertion.  Thus, Abu-Shawish will not be granted leave to reinstate his Bivens claims. Moreover, because it is clear that Abu-Shawish's Bivens claims fail on the merits, I will convert my earlier dismissal of those claims from a dismissal without prejudice to a dismissal with prejudice.

**C.    Leave to Amend Claims for Malicious Prosecution and Abuse of Process**

A separate question is whether I should grant Abu-Shawish leave to amend his complaint to flesh out the details of his claims for malicious prosecution and abuse of

---

[4]Abu-Shawish also seeks to correct typographical errors in the original complaint and make other minor changes, but those changes are inconsequential and require no further discussion.

process against the United States. As things stand, it seems highly unlikely that Abu-Shawish could state plausible claims for malicious prosecution or abuse of process, since the facts alleged in the original complaint strongly suggest that the United States initiated the criminal cases only after conducting long investigations and gathering evidence giving rise to reasonable grounds to believe that Abu-Shawish had been engaged in criminal activity. There is nothing that suggests that federal agents used the criminal process for an improper purpose. Abu-Shawish might be able to add allegations to the complaint showing that federal agents knew that the letters of invitation did not include false promises to pay the invitees' travel expenses. However, even if Abu-Shawish could in good faith add such facts to the complaint, it would still be the case that federal agents had reason to believe that he had defrauded the City of Milwaukee. Since the visa-fraud and federal-program-fraud charges were combined into one single criminal proceeding (which eventually became the proceeding involving mail fraud and transportation of stolen funds), the agents' good-faith belief that Abu-Shawish had defrauded the City of Milwaukee would be enough to prevent liability for malicious prosecution and abuse of process in connection with the first and third criminal cases and all process issued in those cases. Accordingly, I conclude that granting Abu-Shawish leave to amend his malicious-prosecution and abuse-of-process claims would be futile.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the United States' motion for judgment on the pleadings is **GRANTED**.

13

IT IS FURTHER ORDERED that Abu-Shawish's motion for leave to file an amended complaint is **DENIED**.

IT IS FURTHER ORDERED that Abu-Shawish's motion to withdraw ECF Nos. 76 and 77 is **GRANTED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment dismissing all claims against the United States and the individual defendants with prejudice.

Dated at Milwaukee, Wisconsin, this 12th day of September 2012.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge

14